APPEAL,TYPE I–FOIA

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:12−cv−01088−CRC

| | |
|---|---|
| FREEDOM WATCH, INC. v. NATIONAL SECURITY AGENCY et al | Date Filed: 06/28/2012 |
| Assigned to: Judge Christopher R. Cooper | Jury Demand: None |
| Cause: 05:552 Freedom of Information Act | Nature of Suit: 895 Freedom of Information Act |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **FREEDOM WATCH, INC.** | represented by | **Larry E. Klayman**<br>LAW OFFICES OF LARRY KLAYMAN<br>2020 Pennsylvania Avenue, NW<br>Suite 345<br>Washington, DC 20006<br>(310) 595−0800<br>Fax: (310) 275−3276<br>Email: leklayman@gmail.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **NATIONAL SECURITY AGENCY** | represented by | **John Kenneth Theis**<br>U.S. DEPARTMENT OF JUSTICE<br>P.O. Box 883<br>Washington, DC 20044<br>(202) 305−7632<br>Fax: (202) 616−8460<br>Email: john.k.theis@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **CENTRAL INTELLIGENCE AGENCY** | represented by | **John Kenneth Theis**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **DEPARTMENT OF STATE** | represented by | **John Kenneth Theis**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**FourthParty Plaintiff**

1

DEPARTMENT OF DEFENSE                    represented by  **John Kenneth Theis**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 06/28/2012 | 1 | | COMPLAINT against CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY ( Filing fee $ 350, receipt number 4616049678) filed by FREEDOM WATCH, INC.. (Attachments: # 1 Civil Cover Sheet)(jf, ) . (Entered: 07/03/2012) |
| 06/28/2012 | | | SUMMONS (6) Issued as to CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY, DEPARTMENT OF DEFENSE, U.S. Attorney and U.S. Attorney General (jf, ) (Entered: 07/03/2012) |
| 08/30/2012 | 2 | | NOTICE of Appearance by John Kenneth Theis on behalf of CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY (Theis, John) (Entered: 08/30/2012) |
| 08/30/2012 | 3 | | ANSWER to 1 Complaint by CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY.(Theis, John) (Entered: 08/30/2012) |
| 09/05/2012 | | | MINUTE ORDER: Before the Court in this FOIA case are a complaint and an answer. The requirements of LCVR 16.3 and Rule 26(f) of the Federal Rules of Civil procedure appear to be inapplicable. Defendant may have 30 days from the date of this order within which to file a dispositive motion or, in the alternative, to file a report setting forth the schedule according to which it will complete its production of documents to the plaintiff. Signed by Judge Robert L. Wilkins on 9/5/2012. (tcb) (Entered: 09/05/2012) |
| 10/05/2012 | 4 | | MOTION for Judgment on the Pleadings , MOTION for Summary Judgment by CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration, # 4 Declaration, # 5 Text of Proposed Order)(Theis, John) (Entered: 10/05/2012) |
| 10/09/2012 | | | MINUTE ORDER: The parties shall appear on December 10, 2012 in Courtroom 27A at 3:00 PM for a motions hearing on Defendants MOTION for Judgment on the Pleadings and MOTION for Summary Judgment. Signed by Judge Robert L. Wilkins on 10/9/2012. (tcb) (Entered: 10/09/2012) |
| 10/24/2012 | 5 | | RESPONSE re 4 MOTION for Judgment on the Pleadings MOTION for Summary Judgment filed by FREEDOM WATCH, INC.. (Attachments: # 1 Exhibit David Sanger Article, # 2 Text of Proposed Order, # 3 Certificate of Service)(Klayman, Larry) (Entered: 10/24/2012) |
| 11/05/2012 | 6 | | REPLY to opposition to motion re 4 MOTION for Judgment on the Pleadings MOTION for Summary Judgment filed by CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, |

| | | |
|---|---|---|
| | | NATIONAL SECURITY AGENCY. (Theis, John) (Entered: 11/05/2012) |
| 12/10/2012 | | Minute Entry for proceedings held before Judge Robert L. Wilkins: Motion Hearing held and concluded on 12/10/2012 re Defendant's 4 MOTION for Judgment on the Pleadings MOTION for Summary Judgment. Argument heard and Motion GRANTED in part and DENIED in part for reasons stated on the record in open court. The parties directed to meet and confer to submit a proposed order to the Court by close of business, Tuesday, December 11, 2012. Court further directed the parties to meet and confer regarding how to proceed in this case and file a joint status report with a proposed order attached by Monday, December 17, 2012. (Court Reporter Rebecca Stonestreet) (tcb) (Entered: 12/10/2012) |
| 12/11/2012 | 7 | NOTICE of Proposed Order by CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, FREEDOM WATCH, INC., NATIONAL SECURITY AGENCY (Theis, John) (Entered: 12/11/2012) |
| 12/13/2012 | 8 | ORDER re: Defendants 4 Motion for Judgment on the Pleadings and Motion for Summary Judgment; it is hereby ORDERED that the Motion for Judgment on the Pleadings of Defendants National Security Agency and Central Intelligence Agency is GRANTED; and it is FURTHER ORDERED that Defendant Department of Defenses Motion for Partial Summary Judgment is GRANTED; and it is FURTHER ORDERED that Defendant Department of States Motion for Judgment on the Pleadings is GRANTED with respect to Request Numbers 1 and 3−6 of Plaintiffs Freedom of Information Act request; and it is FURTHER ORDERED that Defendant Department of States Motion for Judgment on the Pleadings is DENIED with respect to Request Number 2. Signed by Judge Robert L. Wilkins on 12/13/2012. (tcb) (Entered: 12/13/2012) |
| 12/17/2012 | 9 | STATUS REPORT by CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF STATE, FREEDOM WATCH, INC., NATIONAL SECURITY AGENCY. (Attachments: # 1 Text of Proposed Order)(Theis, John) (Entered: 12/17/2012) |
| 12/18/2012 | 10 | ORDER: Upon consideration of the parties Joint Status Report (Dkt. No. 9), it is hereby ORDERED that no later than March 18, 2013, Defendant Department of State (State) will: (1) conclude its search for records responsive to Plaintiffs Request Number 2 that relate to the June 1, 2012 New York Times article, (2) process and produce any non−exempt records; and (3) produce a Vaughn index (to the extent one is required); and it is FURTHER ORDERED that State will then file a dispositive motion no later than April 17, 2013. Signed by Judge Robert L. Wilkins on 12/18/2012. (tcb) (Entered: 12/18/2012) |
| 12/18/2012 | | Set/Reset Deadlines: Defendant Department of State (State) will: (1) conclude its search for records responsive to Plaintiffs Request Number 2 that relate to the June 1, 2012 New York Times article, (2) process and produce any non−exempt records; and (3) produce a Vaughn index (to the extent one is required) due by 3/18/2013.State Dispositive Motion due by 4/17/2013 (tcb) (Entered: 12/18/2012) |
| 04/17/2013 | 11 | MOTION for Summary Judgment by DEPARTMENT OF STATE |

| | | |
|---|---|---|
| | | (Attachments: #1 Declaration, #2 Text of Proposed Order)(Theis, John) (Entered: 04/17/2013) |
| 04/30/2013 | 12 | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Summary Judgment by FREEDOM WATCH, INC. (Attachments: #1 Text of Proposed Order, #2 Certificate of Service)(Klayman, Larry) (Entered: 04/30/2013) |
| 05/01/2013 | | MINUTE ORDER granting 12 Plaintiff's Motion for Extension of Time to File Response/Reply. Plaintiff shall file its response to Defendants' Motion for Summary Judgment by no later than May 20, 2013. Signed by Judge Robert L. Wilkins on 5/1/2013. (lcrlw3) (Entered: 05/01/2013) |
| 05/01/2013 | | Set/Reset Deadlines: Response to Motion for Summary Judgment due by 5/20/2013. (clv, ) (Entered: 05/01/2013) |
| 05/20/2013 | 13 | RESPONSE re 11 MOTION for Summary Judgment filed by FREEDOM WATCH, INC.. (Attachments: #1 Affidavit Rule 56(d) Affidavit of Larry Klayman)(Klayman, Larry) (Entered: 05/20/2013) |
| 05/20/2013 | 14 | NOTICE *of Filing of Certificate of Service* by FREEDOM WATCH, INC. re 13 Response to motion (Klayman, Larry) (Entered: 05/20/2013) |
| 05/30/2013 | 15 | MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Summary Judgment by DEPARTMENT OF STATE (Attachments: #1 Text of Proposed Order)(Theis, John) (Entered: 05/30/2013) |
| 06/04/2013 | 16 | RESPONSE re 15 MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Summary Judgment *and Request for Discovery* filed by FREEDOM WATCH, INC.. (Attachments: #1 Certificate of Service)(Klayman, Larry) (Entered: 06/04/2013) |
| 06/05/2013 | 17 | ORDER granting 15 MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Summary Judgment ;It is hereby ORDERED that, by July 29,2013, Department of State shall file its reply in support of its Motion for Summary Judgment. Signed by Judge Robert L. Wilkins on 6/5/2013. (tcb) (Entered: 06/05/2013) |
| 06/10/2013 | 18 | MOTION for Discovery *and To Shorten Time for Defendant to Respond* by FREEDOM WATCH, INC. (Attachments: #1 Certificate of Service, #2 Text of Proposed Order)(Klayman, Larry) (Entered: 06/10/2013) |
| 06/11/2013 | | MINUTE ORDER: It is hereby ORDERED that the Defendants are directed to file any response or opposition to Plaintiffs 18 MOTION for Discovery and To Shorten Time for Defendant to Respond by Monday, June 17, 2013 and any reply shall be due by no later than Wednesday, June 20, 2013. Signed by Judge Robert L. Wilkins on 6/11/2013. (tcb) (Entered: 06/11/2013) |
| 06/14/2013 | 19 | MOTION Expedited Ruling re Order, Set Deadlines,, by FREEDOM WATCH, INC. (Attachments: #1 Exhibit Articles Showing State Department Cover Up, #2 Certificate of Service)(Klayman, Larry) (Entered: 06/14/2013) |
| 06/17/2013 | 20 | RESPONSE re 18 MOTION for Discovery *and To Shorten Time for Defendant to Respond* filed by DEPARTMENT OF STATE. (Theis, John) (Entered: 06/17/2013) |

| 06/18/2013 | | | MINUTE ORDER: Plaintiffs MOTION Expedited Ruling re Order, Set Deadlines at DKT #19 is hereby DENIED for failure to attach a proposed order pursuant to Local Rule 7(c) and failure to file a notice with required compliance with Local Rule 7(m). Signed by Judge Robert L. Wilkins on 6/18/2013. (tcb) (Entered: 06/18/2013) |
|---|---|---|---|
| 06/18/2013 | | | MINUTE ORDER: IT IS HEREBY ORDERED THAT Plaintiffs Motion to Take Discovery of State, Dkt. 18, is DENIED. The Court finds that Plaintiffs allegations of bad faith are speculative, and speculation accusations of bad faith do not entitle a FOIA plaintiff to discovery. Accuracy in Media, Inc. v. Natl Park Serv., 194 F.3d 120, 125 (D.C. Cir. 1999). If appropriate, Plaintiff can renew the motion after Defendant State Department has had the opportunity to fully explain the adequacy of its search for responsive records. Signed by Judge Robert L. Wilkins on 6/18/2013. (tcb) (Entered: 06/18/2013) |
| 07/29/2013 | 21 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Summary Judgment by DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Theis, John) (Entered: 07/29/2013) |
| 07/30/2013 | 22 | | ORDER granting 21 Unopposed MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Summary Judgment ; It is hereby ORDERED that, by July 30, 2013, Department of State shall file its reply in support of its Motion for Summary Judgment. Signed by Judge Robert L. Wilkins on 7/30/2013. (tcb) (Entered: 07/30/2013) |
| 07/30/2013 | 23 | | REPLY to opposition to motion re 11 MOTION for Summary Judgment filed by DEPARTMENT OF STATE. (Attachments: # 1 Declaration)(Theis, John) (Entered: 07/30/2013) |
| 01/24/2014 | | | Case reassigned to the Calendar Committee who will oversee it until it is reassigned to another judge. Judge Robert L. Wilkins has been elevated to the U.S. Court of Appeals for DC and is no longer assigned to the case. Any questions should be directed to Terri Barrett, formerly Judge Wilkins deputy clerk, at 202−354−3179 or terri_barrett@dcd.uscourts.gov (tcb) (Entered: 01/24/2014) |
| 04/07/2014 | | | Case directly reassigned to Judge Christopher R. Cooper. Calendar Committee no longer assigned to the case. (zgt, ) (Entered: 04/07/2014) |
| 06/12/2014 | 24 | 33 | ORDER granting 11 Motion for Summary Judgment. Signed by Judge Christopher R. Cooper on 6/12/2014. (lccrc1, ) (Entered: 06/12/2014) |
| 06/12/2014 | 25 | 22 | MEMORANDUM OPINION re: 11 Defendant's Motion for Summary Judgment. Signed by Judge Christopher R. Cooper on 6/12/2014. (lccrc1, ) . (Entered: 06/12/2014) |
| 07/14/2014 | 26 | 6 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 24 Order on Motion for Summary Judgment, 25 Order by FREEDOM WATCH, INC.. Filing fee $ 505, receipt number 0090−3778370. Fee Status: Fee Paid. Parties have been notified. (Klayman, Larry) (Entered: 07/14/2014) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FREEDOM WATCH, INC.** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:12-cv-01088-CRC** |
| **NATIONAL SECURITY AGENCY, ET. AL.,** | |
| **Defendants.** | |

## NOTICE OF APPEAL

NOTICE is hereby given that Plaintiff Freedom Watch appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order and Memorandum Opinion of this Court entered on June 12, 2014 (Docket Nos. 24,25)(Exhibit 1,2), which granted summary judgment to the Defendants, and all other orders and rulings adverse to Plaintiff in this case.

Dated: July 14, 2014

Respectfully Submitted,

 /s/ *Larry Klayman*
Larry Klayman, Esq.
FREEDOM WATCH, INC.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2014 a true and correct copy of the foregoing Notice of Appeal (Case No. 1:12-cv-1088) was submitted electronically to the U.S. District Court for the District of Columbia and served via CM/ECF upon the following:

John K. Theis
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW
Room 6107
Washington, DC 20530
John.K.Theis@usdoj.gov

*Attorney for Defendants.*

Respectfully Submitted,

  /s/ *Larry Klayman*
Larry Klayman, Esq.
FREEDOM WATCH, INC.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

2

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FREEDOM WATCH, INC.,**

        Plaintiff,

        v.

**NATIONAL SECURITY AGENCY,
CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE, and
DEPARTMENT OF STATE,**

        Defendants.

Case No. 1:12-cv-01088 (CRC)

## ORDER

For the reasons stated in the Court's accompanying memorandum opinion, it is hereby

**ORDERED** that Defendant's motion for summary judgment [Dkt. No. 11] is granted.

This is a final, appealable order.

**SO ORDERED.**

Date: 6/12/14

CHRISTOPHER R. COOPER
United States District Judge

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FREEDOM WATCH, INC.,** | |
| Plaintiff, | |
| v. | Case No. 1:12-cv-01088 (CRC) |
| **NATIONAL SECURITY AGENCY, CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, and DEPARTMENT OF STATE,** | |
| Defendants. | |

## MEMORANDUM OPINION

Freedom Watch, Inc., challenged the responses of four federal agencies to its Freedom of Information Act ("FOIA") requests regarding a 2012 *New York Times* article discussing a U.S. cyber-attack on Iran. After the Court ruled in favor of three of the agencies on the pleadings, and dismissed claims against the State Department with respect to all but one category of requested records, the State Department conducted a rolling search for records responsive to Freedom Watch's lone remaining request. Because the Department's affidavits establish that it conducted an adequate search, and Freedom Watch has not provided any evidence to the contrary, the Court will grant the Department's motion for summary judgment.

### I.    Background

The genesis of this dispute is a June 1, 2012 *New York Times* article by David Sanger describing the Bush and Obama Administrations' classified program to undermine Iran's nuclear program by releasing a computer "worm" within that country's main nuclear enrichment plant. Compl. Ex. 1. Sanger reportedly based his account of the initiative—dubbed "Olympic Games"— on interviews with "current and former American, European and Israeli officials involved in the program, as well as a range of outside experts." Id. Freedom Watch believed that classified

information about the program had been leaked by "Obama Administration sources on the President's behalf . . . to further [his] 2012 re-election campaign[,]" notwithstanding the multiple other potential sources for the information contained in the article.  Id.  Expressing alarm that these suspected leaks had jeopardized national security and hastened a confrontation between Iran and Israel, Freedom Watch submitted  requests under the Freedom of Information Act, 5 U.S.C. § 552, to the Department of Defense ("DOD"), the Central Intelligence Agency ("CIA"), the National Security Agency ("NSA"), and the State Department.  The requests sought: (1) information relating to the article, including classified information that was allegedly leaked to Sanger; (2) records relating to information released to Sanger; (3) information on whomever provided information to Sanger; (4) communications with the White House regarding the article; (5) information related to "the decision to 'leak'"; and (6) information on any government investigations into the article.  Id. ¶ 4.

After waiting the required 20 days, see 5 U.S.C. § 552(a)(6)(A), Freedom Watch filed suit to compel the four agencies to search for and produce responsive records.  The NSA and the CIA moved for judgment on the pleadings and the DOD moved for summary judgment, each of which the Court granted, resolving all claims in favor of those agencies.  Order (Dec. 13, 2012).  The Court also granted the State Department's motion for judgment on the pleadings with respect to requests 1 and 3–6, finding the requests to be overly speculative, but denied it as to Freedom Watch's second request, regarding information released to Sanger.  Id.

After the partial dismissal, and while summary judgment briefing was still ongoing, the State Department conducted several searches for records responsive to Freedom Watch's second request.  The Department's searches are detailed in declarations provided by Sheryl L. Walter, Director of the Department's Office of Information Programs and Services ("IPS").  According to Ms. Walter, IPS evaluated Freedom Watch's request "to determine which offices, overseas posts, or

2

records systems within the Department may be reasonably expected to contain the records requested." Supplemental Walter Decl. ¶ 1. This selection process was based on "the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions" as well as the "nature, scope, and complexity of the request." Id. ¶ 10. IPS identified three "offices or records systems with a reasonable possibility of possessing responsive documents": the Central Foreign Policy Records, which, as the name suggests, is the central record system at the Department; the Bureau of Public Affairs, which is charged with managing communications between the Department and the media; and the Bureau of Near Eastern Affairs, which "advis[es] the Secretary of State on matters in North Africa and the Middle East." Id. ¶¶ 12–18.

With relevant locations for the search determined, Department employees began by conducting full text searches of the electronic record systems in each department—including individual electronic records of all employees in the Bureau of Public Affairs and 15 employees in the Bureau of Near Eastern Affairs' Iran office—for the terms "David Sanger" and "David E. Sanger." Id. ¶¶ 14, 17, 19. The Near Eastern Affairs Bureau's Iran office also searched physical records that its employees knew to be excluded from the electronic records system and had a "reasonable possibility of containing information responsive to this FOIA request." Id. ¶ 19. These initial searches identified no responsive documents except in the Bureau of Public Affairs, which discovered three records, two of which the Department released in full and one it released in part after redacting material it deemed nonresponsive. Id. ¶¶ 9, 14, 17, 19.

After receiving Freedom Watch's opposition to its summary judgment motion, the Department voluntarily asked the Bureau of Public Affairs to confirm that no other locations should be searched. In response, the Bureau determined that it had neglected to search its front office, which performs executive tasks to support the Bureau. Second Supplemental Walter Decl. ¶ 6.

3

Due to its discovery of additional potentially responsive records, the Department sought and was

granted a 60-day extension of time to conduct a supplemental search and reply to Freedom Watch's

opposition brief.  Order (June 5, 2013).  Employees of the Bureau conducted a search of the front

office's paper records and searched its electronic records for the term "Sanger," uncovering 62

responsive documents.  These documents revealed that Sanger had interviewed five State

Department employees.  Id. ¶¶ 7–9.  The Department then searched the records of those five

employees and their respective departments—by manual search of paper records and full-text

search of electronic records for the term "Sanger"—discovering 14 additional documents.  Id. ¶¶

10–19.  Since the beginning of this suit, the State Department has produced a total of 79 documents

responsive to Freedom Watch's FOIA request, releasing 58 in full, 20 in part, and withholding one

in full.  Id. ¶¶ 3, 48.

      In the midst of the Department's voluntary supplemental search, Freedom Watch moved to

depose a State Department records custodian concerning the adequacy of the original search, which

Freedom Watch suggested was part of a pattern of "outright obstruction of justice" by the Obama

Administration.  Mot. for Discovery at 1.  Judge Wilkins denied the motion, finding no evidence of

bad faith on the part of Department, but invited Freedom Watch to renew its request after the

Department had an opportunity to fully explain the adequacy of its search.  Minute Order (June 18,

2013).  Freedom Watch has declined to renew its motion or to challenge the Department's

supplemental production.

## II.     Standard of Review

      The Court may grant summary judgment if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  The Court must accept the non-movant's evidence as true and draw all reasonable

inferences in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

4

(1986). FOIA cases typically and appropriately are decided on motions for summary judgment. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); accord *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment in the FOIA context requires the government to "demonstrate the absence of a genuine dispute regarding the adequacy of its search for or production of responsive records." *Judicial Watch, Inc. v. Dep't of the Navy*, 971 F. Supp. 2d 1, 3 (D.D.C. 2013) (citing *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 21–22 (D.D.C. 2012)).

### III.   Analysis

#### A.  Adequacy of the State Department's Search

To meet its FOIA obligations, an agency must show that it "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The agency is not required to prove that it discovered every possibly relevant document, id. at 1485, but simply must demonstrate "a good faith effort[.]" *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The Court will judge the adequacy of an agency's search for documents by a standard of reasonableness that "depends, not surprisingly, upon the facts of each case." *Weisberg*, 705 F.2d at 1485.

The Court may grant summary judgment on the basis of agency affidavits and declarations alone when they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The affidavits need not "set forth with meticulous documentation the details of an epic search for the requested records[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). But they must describe "what records were searched, by whom, and through what processes," *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551–52 (D.C. Cir. 2008) (citing *Weisberg v. Dep't of Justice*, 637 F.2d 365, 371 (D.C. Cir. 1980)), and should "set[] forth the search terms and the type of search performed and aver[] that all files likely to contain

5

responsive materials . . . were searched." Oglesby, 920 F.2d at 68. There is a presumption of good faith accorded to agency submitted affidavits or declarations, "which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The State Department has demonstrated that it conducted an adequate search for records responsive to Freedom Watch's FOIA request. Ms. Walter's declarations indicate the places that were searched and explain why the Department determined that those records systems were likely to contain responsive documents. IPS searched the central record system for the State Department as a whole, the record systems of the bureau that manages communications with the media, and the bureau that oversees policy in Iran, the country to which Sanger's article relates. Supplemental Walter Decl. ¶¶ 12–13, 14, 18. These are perfectly logical locations to search for potentially responsive records. Walter's declarations further explain that the terms "David Sanger" and "Sanger" were used to search relevant electronic records and that physical files were reviewed by knowledgeable staff. Id. ¶¶ 14, 17, 19; Second Supplemental Walter Decl. ¶¶ 7–9. Searching by Sanger's name was a reasonable method of uncovering documents regarding what information employees may have given him; indeed, Freedom Watch does not quarrel with the search methods used. Additionally, when IPS realized it had neglected to search other relevant record systems or when documents suggested that other individuals might have responsive records, the Department responded by conducting further searches and providing Freedom Watch additional responsive records. Second Supplemental Walter Decl. ¶¶ 7–19. Notably, Freedom Watch does not object to the adequacy of the supplemental searches conducted after it filed its opposition.

Freedom Watch may overcome the presumption of good faith accorded the State Department's declarations by presenting countervailing evidence, see Iturralde v. Comptroller of the Currency, 315 F.3d 311, 314 (D.C. Cir. 2003), but it has not done so. It offers instead

6

speculative, unsupported assertions that do not call into question the adequacy of the State

Department's search.  It posits, for example, that Sanger must have received the information for the

article directly from former Secretary of State Hillary Clinton, and that "someone was undoubtedly

present at the interview and was responsible for taking notes, preparing memoranda, and/or

preparing some sort of record of the Secretary of State's statements."  Pl.'s Opp. to Mot. for Summ.

J. at 2, 6–8.  These allegations, lacking any evidentiary support, are insufficient to contradict the

comprehensive description of the search set forth in the Walter declarations.  See SafeCard Servs.,

926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not

undermine the finding that the agency conducted a reasonable search for them." (citation omitted)).

Moreover, the Court determines adequacy "not by the fruits of the search, but by the

appropriateness of the methods used to carry out the search."  Iturralde, 315 F.3d at 315.

Freedom Watch also questions the adequacy of the State Department's search because the

lion's share of responsive documents was found only as a result of corrective searches.  Pl.'s Opp.

to Mot. For Summ. J. at 3–4.  But "it does not matter that an agency's *initial* search failed to

uncover certain responsive documents so long as subsequent searches captured them."  Hodge v.

FBI, 703 F.3d 575, 580 (D.C. Cir. 2013) (emphasis in original).  Unless Freedom Watch "can

identify any additional searches that must be conducted," id., which it has declined to do, the State

Department has met its burden by conducting searches that were reasonably calculated to find

responsive records, regardless of whether the records were found initially or after subsequent

searches.

Finally, Freedom Watch argues that because IPS referred one document to another agency

for review and redaction, Walters lacks "the requisite personal knowledge as to" whether the

document was responsive or was appropriately redacted.  Pl.'s Opp. to Mot. for Summ. J. at 6–7.

Walter's supplemental declaration explains that the document in question originated with the

7

17

National Security Staff ("NSS"), now called the National Security Council, which requested the

redaction of nonresponsive sections.  Second Supplemental Walter Decl. ¶¶ 3–4.  Walter, as IPS's

director, had sufficient personal knowledge of the document's content because IPS initially

discovered the document before sending it to NSS, which then requested redactions that *IPS*

performed.  Id.  She also adequately justifies withholding parts of the document, explaining that the

redacted information discussed issues that were of media interest at the time but were not related to

the subject of Freedom Watch's request.  Id.  The practice of redacting non-responsive materials

from documents produced in response to FOIA requests has been approved by courts in this Circuit.

See, e.g., Menifee v. Dep't of the Interior, 931 F. Supp. 2d 149, 167 (D.D.C. 2013); Pinson v.

Lappin, 806 F. Supp. 2d 230, 237 (D.D.C. 2011); Wilson v. Dep't of Transp., 730 F. Supp. 2d 140,

156 (D.D.C. 2010), aff'd, 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010).[1]

     In summary, the State Department has submitted "reasonably detailed" declarations "setting

forth the search terms and the type of search performed, and averring that all files likely to contain

responsive materials (if such records exist) were searched[.]"  Oglesby, 920 F.2d at 68.  Because

Freedom Watch has not offered evidence to counter the Department's declarations, the State

Department has satisfied its burden to establish that it conducted an adequate search in response to

Freedom Watch's FOIA request.

---

[1] Freedom Watch also argues that it cannot know if the search was adequate without knowing how many subsidiary departments actually exist within the State Department and expresses skepticism that "a large federal agency throughout the world[] only has two databases from which to search." Pl.'s Opp. to Mot. for Summ. J. at 7.  As stated above, however, mere speculation that other record systems should exist does not contradict the State Department's affidavits explaining why certain record systems were determined likely to contain responsive records.  See SafeCard Servs., 926 F.2d at 1201.  The Court also notes that the State Department's website provides a publically available chart of its subsidiary departments.  Department Organization Chart: March 2014, U.S. Department of State, http://www.state.gov/r/pa/ei/rls/dos/99494.htm (last visited June 12, 2014).

8

B. The State Department's Vaughn Index

In addition to challenging the adequacy of the State Department's search, Freedom Watch

argues in its opposition that the Department failed to create a Vaughn index for the withheld

documents. Pl.'s Opp. to Mot. for Summ. J. at 8–9. The only document withheld when Freedom

Watch filed its opposition was the NSS document, which, as explained above, the State Department

adequately justified redacting. After conducting supplemental searches, the State Department

withheld several other documents in whole or in part, but detailed for each record the type of

document, the author of the document, a general description of the contents of the document, and

the basis for the exemption being claimed. See Second Supplemental Walter Decl. ¶¶ 20–47.

"[A]n agency does not have to provide an index per se, but can satisfy its burden by other means,

such as . . . providing a detailed affidavit or declaration." Voinche v. FBI, 412 F. Supp. 2d 60, 65

(D.D.C. 2006) (citing Gallant v. NLRB, 26 F.3d 168, 172 (D.C. Cir. 1994)). The descriptions in

Walter's declaration "give the reviewing court a reasonable basis to evaluate the claim of

privilege," Gallant, 26 F.3d at 172–73, and thus adequately support the State Department's

withholdings.

C. Exemption 5

FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 522(b)(5). Exemption 5 encompasses the deliberative process privilege, which

protects "'documents reflecting advisory opinions, recommendations and deliberations comprising

part of a process by which governmental decisions and polices are formulated.'" Dep't of Interior

v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck

& Co., 421 U.S. 132,150 (1975)). The purpose behind the privilege—and thus Exemption 5—is "to

enhance the quality of agency decisions by protecting open and frank discussion among those who

9

make them within the Government. Id. at 9.

Pursuant to Exemption 5, the State Department withheld portions of three documents and all of one document because they contained briefing material for senior department officials with "preliminary thoughts and ideas determined to be important for preparing [the] senior official[s] for an interview with a journalist from a major news media organization." Second Supplemental Walter Decl. ¶¶ 27, 31, 46, 47. Because these documents reflect intra-agency deliberations on communications with the media, they fall within the deliberative process privilege and are covered under Exemption 5. See Judicial Watch, Inc. v. Dep't of Commerce, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (agency properly withheld "talking points and recommendations for how to answer questions . . . . prepared by [agency] employees for the consideration of [agency] decision-makers"); see also Competitive Enter. Inst. v. EPA, 12-1617, 2014 WL 308093, at *10–11 (D.D.C. Jan. 29, 2014) (Exemption 5 held to protect "media-related withholdings . . . reflect[ing] ongoing decisionmaking about 'how the agency's activities should be described to the general public'").

D.  Exemption 6

FOIA Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" broadly include documents containing "purely personal information." See, e.g., Gov't Accountability Project v. Dep't of State, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (citing Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982)).

The State Department withheld information in 17 documents provided to Freedom Watch pursuant to Exemption 6 because the redacted information consisted of personal email addresses, phone numbers, and details of individuals' personal lives. Second Supplemental Walter Decl. ¶¶ 28–30, 32–45. Such "purely personal information" clearly falls within Exemption 6.

10

**IV.    Conclusion**

For the foregoing reasons, the Court will grant the State Department's motion for Summary

Judgment.  The Court will issue an order in accordance with this Memorandum Opinion.

Date:  ___June 12, 2014___                              _____

                                        CHRISTOPHER R. COOPER
                                        United States District Judge

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FREEDOM WATCH, INC.,** | |
| Plaintiff, | |
| v. | Case No. 1:12-cv-01088 (CRC) |
| **NATIONAL SECURITY AGENCY, CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, and DEPARTMENT OF STATE,** | |
| Defendants. | |

## MEMORANDUM OPINION

Freedom Watch, Inc., challenged the responses of four federal agencies to its Freedom of Information Act ("FOIA") requests regarding a 2012 *New York Times* article discussing a U.S. cyber-attack on Iran. After the Court ruled in favor of three of the agencies on the pleadings, and dismissed claims against the State Department with respect to all but one category of requested records, the State Department conducted a rolling search for records responsive to Freedom Watch's lone remaining request. Because the Department's affidavits establish that it conducted an adequate search, and Freedom Watch has not provided any evidence to the contrary, the Court will grant the Department's motion for summary judgment.

### I.    Background

The genesis of this dispute is a June 1, 2012 *New York Times* article by David Sanger describing the Bush and Obama Administrations' classified program to undermine Iran's nuclear program by releasing a computer "worm" within that country's main nuclear enrichment plant. Compl. Ex. 1. Sanger reportedly based his account of the initiative—dubbed "Olympic Games"— on interviews with "current and former American, European and Israeli officials involved in the program, as well as a range of outside experts." Id. Freedom Watch believed that classified

information about the program had been leaked by "Obama Administration sources on the President's behalf . . . to further [his] 2012 re-election campaign[,]" notwithstanding the multiple other potential sources for the information contained in the article.  Id.  Expressing alarm that these suspected leaks had jeopardized national security and hastened a confrontation between Iran and Israel, Freedom Watch submitted  requests under the Freedom of Information Act, 5 U.S.C. § 552, to the Department of Defense ("DOD"), the Central Intelligence Agency ("CIA"), the National Security Agency ("NSA"), and the State Department.  The requests sought: (1) information relating to the article, including classified information that was allegedly leaked to Sanger; (2) records relating to information released to Sanger; (3) information on whomever provided information to Sanger; (4) communications with the White House regarding the article; (5) information related to "the decision to 'leak'"; and (6) information on any government investigations into the article.  Id. ¶ 4.

After waiting the required 20 days, see 5 U.S.C. § 552(a)(6)(A), Freedom Watch filed suit to compel the four agencies to search for and produce responsive records.  The NSA and the CIA moved for judgment on the pleadings and the DOD moved for summary judgment, each of which the Court granted, resolving all claims in favor of those agencies.  Order (Dec. 13, 2012).  The Court also granted the State Department's motion for judgment on the pleadings with respect to requests 1 and 3–6, finding the requests to be overly speculative, but denied it as to Freedom Watch's second request, regarding information released to Sanger.  Id.

After the partial dismissal, and while summary judgment briefing was still ongoing, the State Department conducted several searches for records responsive to Freedom Watch's second request.  The Department's searches are detailed in declarations provided by Sheryl L. Walter, Director of the Department's Office of Information Programs and Services ("IPS").  According to Ms. Walter, IPS evaluated Freedom Watch's request "to determine which offices, overseas posts, or

2

records systems within the Department may be reasonably expected to contain the records

requested." Supplemental Walter Decl. ¶ 1. This selection process was based on "the holdings of

the Department's records systems, applicable records disposition schedules, and the substantive and

functional mandates of numerous Department offices and Foreign Service posts and missions" as

well as the "nature, scope, and complexity of the request." Id. ¶ 10. IPS identified three "offices or

records systems with a reasonable possibility of possessing responsive documents": the Central

Foreign Policy Records, which, as the name suggests, is the central record system at the

Department; the Bureau of Public Affairs, which is charged with managing communications

between the Department and the media; and the Bureau of Near Eastern Affairs, which "advis[es]

the Secretary of State on matters in North Africa and the Middle East." Id. ¶¶ 12–18.

With relevant locations for the search determined, Department employees began by

conducting full text searches of the electronic record systems in each department—including

individual electronic records of all employees in the Bureau of Public Affairs and 15 employees in

the Bureau of Near Eastern Affairs' Iran office—for the terms "David Sanger" and "David E.

Sanger." Id. ¶¶ 14, 17, 19. The Near Eastern Affairs Bureau's Iran office also searched physical

records that its employees knew to be excluded from the electronic records system and had a

"reasonable possibility of containing information responsive to this FOIA request." Id. ¶ 19. These

initial searches identified no responsive documents except in the Bureau of Public Affairs, which

discovered three records, two of which the Department released in full and one it released in part

after redacting material it deemed nonresponsive. Id. ¶¶ 9, 14, 17, 19.

After receiving Freedom Watch's opposition to its summary judgment motion, the

Department voluntarily asked the Bureau of Public Affairs to confirm that no other locations should

be searched. In response, the Bureau determined that it had neglected to search its front office,

which performs executive tasks to support the Bureau. Second Supplemental Walter Decl. ¶ 6.

3

Due to its discovery of additional potentially responsive records, the Department sought and was

granted a 60-day extension of time to conduct a supplemental search and reply to Freedom Watch's

opposition brief. Order (June 5, 2013). Employees of the Bureau conducted a search of the front

office's paper records and searched its electronic records for the term "Sanger," uncovering 62

responsive documents. These documents revealed that Sanger had interviewed five State

Department employees. Id. ¶¶ 7–9. The Department then searched the records of those five

employees and their respective departments—by manual search of paper records and full-text

search of electronic records for the term "Sanger"—discovering 14 additional documents. Id. ¶¶

10–19. Since the beginning of this suit, the State Department has produced a total of 79 documents

responsive to Freedom Watch's FOIA request, releasing 58 in full, 20 in part, and withholding one

in full. Id. ¶¶ 3, 48.

In the midst of the Department's voluntary supplemental search, Freedom Watch moved to

depose a State Department records custodian concerning the adequacy of the original search, which

Freedom Watch suggested was part of a pattern of "outright obstruction of justice" by the Obama

Administration. Mot. for Discovery at 1. Judge Wilkins denied the motion, finding no evidence of

bad faith on the part of Department, but invited Freedom Watch to renew its request after the

Department had an opportunity to fully explain the adequacy of its search. Minute Order (June 18,

2013). Freedom Watch has declined to renew its motion or to challenge the Department's

supplemental production.

## II.    Standard of Review

The Court may grant summary judgment if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The Court must accept the non-movant's evidence as true and draw all reasonable

inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

4

(1986). FOIA cases typically and appropriately are decided on motions for summary judgment.

Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); accord Brayton

v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary

judgment in the FOIA context requires the government to "demonstrate the absence of a genuine

dispute regarding the adequacy of its search for or production of responsive records."  Judicial

Watch, Inc. v. Dep't of the Navy, 971 F. Supp. 2d 1, 3 (D.D.C. 2013) (citing Nat'l Whistleblower

Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 21–22 (D.D.C. 2012)).

### III.    Analysis

A.  Adequacy of the State Department's Search

To meet its FOIA obligations, an agency must show that it "conducted a search reasonably

calculated to uncover all relevant documents."  Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351

(D.C. Cir. 1983).  The agency is not required to prove that it discovered every possibly relevant

document, id. at 1485, but simply must demonstrate "a good faith effort[.]"  Oglesby v. Dep't of the

Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  The Court will judge the adequacy of an agency's search

for documents by a standard of reasonableness that "depends, not surprisingly, upon the facts of

each case."  Weisberg, 705 F.2d at 1485.

The Court may grant summary judgment on the basis of agency affidavits and declarations

alone when they are "relatively detailed and non-conclusory."  SafeCard Servs., Inc. v. SEC, 926

F.2d 1197, 1200 (D.C. Cir. 1991).  The affidavits need not "set forth with meticulous

documentation the details of an epic search for the requested records[.]"  Perry v. Block, 684 F.2d

121, 127 (D.C. Cir. 1982).  But they must describe "what records were searched, by whom, and

through what processes," Steinberg v. Dep't of Justice, 23 F.3d 548, 551–52 (D.C. Cir. 2008)

(citing Weisberg v. Dep't of Justice, 637 F.2d 365, 371 (D.C. Cir. 1980)), and should "set[] forth

the search terms and the type of search performed and aver[] that all files likely to contain

5

responsive materials . . . were searched." Oglesby, 920 F.2d at 68. There is a presumption of good

faith accorded to agency submitted affidavits or declarations, "which cannot be rebutted by 'purely

speculative claims about the existence and discoverability of other documents.'" SafeCard Servs.,

926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The State Department has demonstrated that it conducted an adequate search for records

responsive to Freedom Watch's FOIA request.  Ms. Walter's declarations indicate the places that

were searched and explain why the Department determined that those records systems were likely

to contain responsive documents.  IPS searched the central record system for the State Department

as a whole, the record systems of the bureau that manages communications with the media, and the

bureau that oversees policy in Iran, the country to which Sanger's article relates.  Supplemental

Walter Decl. ¶¶ 12–13, 14, 18.  These are perfectly logical locations to search for potentially

responsive records.  Walter's declarations further explain that the terms "David Sanger" and

"Sanger" were used to search relevant electronic records and that physical files were reviewed by

knowledgeable staff.  Id. ¶¶ 14, 17, 19; Second Supplemental Walter Decl. ¶¶ 7–9.  Searching by

Sanger's name was a reasonable method of uncovering documents regarding what information

employees may have given him; indeed, Freedom Watch does not quarrel with the search methods

used.  Additionally, when IPS realized it had neglected to search other relevant record systems or

when documents suggested that other individuals might have responsive records, the Department

responded by conducting further searches and providing Freedom Watch additional responsive

records.  Second Supplemental Walter Decl. ¶¶ 7–19.  Notably, Freedom Watch does not object to

the adequacy of the supplemental searches conducted after it filed its opposition.

Freedom Watch may overcome the presumption of good faith accorded the State

Department's declarations by presenting countervailing evidence, see Iturralde v. Comptroller of

the Currency, 315 F.3d 311, 314 (D.C. Cir. 2003), but it has not done so.  It offers instead

6

27

speculative, unsupported assertions that do not call into question the adequacy of the State Department's search. It posits, for example, that Sanger must have received the information for the article directly from former Secretary of State Hillary Clinton, and that "someone was undoubtedly present at the interview and was responsible for taking notes, preparing memoranda, and/or preparing some sort of record of the Secretary of State's statements." Pl.'s Opp. to Mot. for Summ. J. at 2, 6–8. These allegations, lacking any evidentiary support, are insufficient to contradict the comprehensive description of the search set forth in the Walter declarations. See SafeCard Servs., 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." (citation omitted)). Moreover, the Court determines adequacy "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde, 315 F.3d at 315.

Freedom Watch also questions the adequacy of the State Department's search because the lion's share of responsive documents was found only as a result of corrective searches. Pl.'s Opp. to Mot. For Summ. J. at 3–4. But "it does not matter that an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them." Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013) (emphasis in original). Unless Freedom Watch "can identify any additional searches that must be conducted," id., which it has declined to do, the State Department has met its burden by conducting searches that were reasonably calculated to find responsive records, regardless of whether the records were found initially or after subsequent searches.

Finally, Freedom Watch argues that because IPS referred one document to another agency for review and redaction, Walters lacks "the requisite personal knowledge as to" whether the document was responsive or was appropriately redacted. Pl.'s Opp. to Mot. for Summ. J. at 6–7. Walter's supplemental declaration explains that the document in question originated with the

7

National Security Staff ("NSS"), now called the National Security Council, which requested the

redaction of nonresponsive sections. Second Supplemental Walter Decl. ¶¶ 3–4. Walter, as IPS's

director, had sufficient personal knowledge of the document's content because IPS initially

discovered the document before sending it to NSS, which then requested redactions that *IPS*

performed. Id. She also adequately justifies withholding parts of the document, explaining that the

redacted information discussed issues that were of media interest at the time but were not related to

the subject of Freedom Watch's request. Id. The practice of redacting non-responsive materials

from documents produced in response to FOIA requests has been approved by courts in this Circuit.

See, e.g., Menifee v. Dep't of the Interior, 931 F. Supp. 2d 149, 167 (D.D.C. 2013); Pinson v.

Lappin, 806 F. Supp. 2d 230, 237 (D.D.C. 2011); Wilson v. Dep't of Transp., 730 F. Supp. 2d 140,

156 (D.D.C. 2010), aff'd, 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010).[1]

     In summary, the State Department has submitted "reasonably detailed" declarations "setting

forth the search terms and the type of search performed, and averring that all files likely to contain

responsive materials (if such records exist) were searched[.]" Oglesby, 920 F.2d at 68. Because

Freedom Watch has not offered evidence to counter the Department's declarations, the State

Department has satisfied its burden to establish that it conducted an adequate search in response to

Freedom Watch's FOIA request.

---

[1] Freedom Watch also argues that it cannot know if the search was adequate without knowing how many subsidiary departments actually exist within the State Department and expresses skepticism that "a large federal agency throughout the world[] only has two databases from which to search." Pl.'s Opp. to Mot. for Summ. J. at 7. As stated above, however, mere speculation that other record systems should exist does not contradict the State Department's affidavits explaining why certain record systems were determined likely to contain responsive records. See SafeCard Servs., 926 F.2d at 1201. The Court also notes that the State Department's website provides a publically available chart of its subsidiary departments. Department Organization Chart: March 2014, U.S. Department of State, http://www.state.gov/r/pa/ei/rls/dos/99494.htm (last visited June 12, 2014).

8

B. The State Department's Vaughn Index

In addition to challenging the adequacy of the State Department's search, Freedom Watch

argues in its opposition that the Department failed to create a Vaughn index for the withheld

documents.  Pl.'s Opp. to Mot. for Summ. J. at 8–9.  The only document withheld when Freedom

Watch filed its opposition was the NSS document, which, as explained above, the State Department

adequately justified redacting.   After conducting supplemental searches, the State Department

withheld several other documents in whole or in part, but detailed for each record the type of

document, the author of the document, a general description of the contents of the document, and

the basis for the exemption being claimed.  See Second Supplemental Walter Decl. ¶¶ 20–47.

"[A]n agency does not have to provide an index per se, but can satisfy its burden by other means,

such as . . . providing a detailed affidavit or declaration."  Voinche v. FBI, 412 F. Supp. 2d 60, 65

(D.D.C. 2006) (citing Gallant v. NLRB, 26 F.3d 168, 172 (D.C. Cir. 1994)).  The descriptions in

Walter's declaration "give the reviewing court a reasonable basis to evaluate the claim of

privilege," Gallant, 26 F.3d at 172–73, and thus adequately support the State Department's

withholdings.

C.  Exemption 5

FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party other than an agency in litigation with the

agency."  5 U.S.C. § 522(b)(5).  Exemption 5 encompasses the deliberative process privilege, which

protects "'documents reflecting advisory opinions, recommendations and deliberations comprising

part of a process by which governmental decisions and polices are formulated.'"  Dep't of Interior

v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck

& Co., 421 U.S. 132,150 (1975)).  The purpose behind the privilege—and thus Exemption 5—is "to

enhance the quality of agency decisions by protecting open and frank discussion among those who

9

make them within the Government. Id. at 9.

Pursuant to Exemption 5, the State Department withheld portions of three documents and all of one document because they contained briefing material for senior department officials with "preliminary thoughts and ideas determined to be important for preparing [the] senior official[s] for an interview with a journalist from a major news media organization." Second Supplemental Walter Decl. ¶¶ 27, 31, 46, 47. Because these documents reflect intra-agency deliberations on communications with the media, they fall within the deliberative process privilege and are covered under Exemption 5. See Judicial Watch, Inc. v. Dep't of Commerce, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (agency properly withheld "talking points and recommendations for how to answer questions . . . . prepared by [agency] employees for the consideration of [agency] decision-makers"); see also Competitive Enter. Inst. v. EPA, 12-1617, 2014 WL 308093, at *10–11 (D.D.C. Jan. 29, 2014) (Exemption 5 held to protect "media-related withholdings . . . reflect[ing] ongoing decisionmaking about 'how the agency's activities should be described to the general public'").

D.  Exemption 6

FOIA Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" broadly include documents containing "purely personal information." See, e.g., Gov't Accountability Project v. Dep't of State, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (citing Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982)).

The State Department withheld information in 17 documents provided to Freedom Watch pursuant to Exemption 6 because the redacted information consisted of personal email addresses, phone numbers, and details of individuals' personal lives. Second Supplemental Walter Decl. ¶¶ 28–30, 32–45. Such "purely personal information" clearly falls within Exemption 6.

10

**IV.    Conclusion**

For the foregoing reasons, the Court will grant the State Department's motion for Summary

Judgment.  The Court will issue an order in accordance with this Memorandum Opinion.

Date:  ___June 12, 2014_____

_Christopher R. Cooper_

CHRISTOPHER R. COOPER
United States District Judge

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FREEDOM WATCH, INC.,**

Plaintiff,

v.

**NATIONAL SECURITY AGENCY,
CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE, and
DEPARTMENT OF STATE,**

Defendants.

Case No. 1:12-cv-01088 (CRC)

## ORDER

For the reasons stated in the Court's accompanying memorandum opinion, it is hereby

**ORDERED** that Defendant's motion for summary judgment [Dkt. No. 11] is granted.

This is a final, appealable order.

**SO ORDERED.**

Date: 6/12/14

CHRISTOPHER R. COOPER
United States District Judge